UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LEWIS RODNEY GAGNE,

        Petitioner,

v.                                       CASE NO. 04-60283
                                         HONORABLE MARIANNE O. BATTANI
RAYMOND BOOKER,

        Respondent.

_____/

## OPINION AND ORDER GRANTING HABEAS CORPUS PETITION

Petitioner Lewis Rodney Gagne has filed a *pro se* application for the writ of habeas corpus under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's state conviction for two counts of first-degree criminal sexual conduct. Because Petitioner's right to present a defense was violated by the trial court's exclusion of certain evidence about the complainant, the writ will issue.

## I. Background

Petitioner was charged in Ingham County, Michigan with three counts of first-degree criminal sexual conduct. *See* MICH. COMP. LAWS § 750.520b(f). The charges arose from allegations that Petitioner and his co-defendant, Donald Swathwood (Swathwood), physically injured the complainant while sexually penetrating her against her will. The complainant became involved with Petitioner in January of 2000. He moved into her home in late January or early February of the same year, but they broke off their relationship about June 10, 2000. The alleged sexual assault occurred at the complainant's home late on July 3, 2000, and in the early morning hours of July 4, 2000.

## A. Testimony by Prosecution Witnesses

The complainant admitted at trial that she engaged in some voluntary sex acts with Petitioner on the night in question, but she claimed that the subsequent sexual activity with Petitioner and Swathwood was involuntary. She spoke with her adult son, Chadwick Bement, by telephone about noon on July 4, 2000. Although she did not sound good to Bement, she did not mention Petitioner or Swathwood during the conversation, and she did not say that she had been beat. She went to see Bement early on July 5, 2000. She then told him that Petitioner and his friend had held her down, beat her, and raped her. She cried and winced as if in pain when she talked about the incident.

The complainant went to see her personal physician, Dr. Paul Harkerson, on the afternoon of July 5, 2000. Dr. Harkerson testified that the complainant cried and appeared upset when she informed him that she was sexually assaulted by her boyfriend and his friend. She complained of vaginal and rectal bleeding and multiple bruises from the assault. Dr. Harkerson prescribed medication for the complainant's anxiety, inability to sleep, and upset stomach. He and the complainant agreed to notify the police about the incident.

Police officer Joel Johnson was dispatched to the complainant's home on the evening of July 5, 2000. He testified that the victim was upset when he interviewed her. She informed Officer Johnson that she had told Petitioner and Swathwood to stop what they were doing, but they merely laughed at her and continued to assault her after suggesting that she perform oral sex on David Stout. Officer Johnson took the complainant to the hospital where she was examined.

The emergency room physician, Anthony Izokaitis, testified that he observed a bruise on the complainant's breast and buttock. The complainant was distraught when she described the

sexual assault to him, and she complained of pain.

Detective Steven Jex testified that the complainant was still upset when he attempted to take a statement from her several days after the alleged assault. Detective Jex had a brief conversation with Swathwood on July 10, 2000. Swathwood agreed to re-contact Detective Jex and make a formal statement, but he never made the contact.

On July 11, 2000, Detective Jex spoke with Petitioner and David Stout. Petitioner told Jex that the complainant had falsely accused him of criminal sexual conduct because she was upset that both Petitioner and Swathwood were moving to California. Both Petitioner and Swathwood admitted to Detective Jex in separate interviews that they had sexual relations with the complainant, but they stated that the sexual contact was consensual. Stout was an eyewitness to the alleged sexual assault, but he was reluctant to provide Detective Jex with any details about the incident.

### B. Testimony by Defense Witnesses

Petitioner and Swathwood defended the charges at trial on the ground that the complainant consented to the sexual activity and falsified the charges. The defendants claimed that the charges were motivated by the complainant's failed relationship with Petitioner and because they withdrew $300.00 from the complainant's credit union account after the alleged assault. The defendants asserted that the complainant was angry with them because they bought cocaine with the money and smoked the cocaine without sharing it with her.

According to defense witness Susan Craft, the complainant once informed her that she (the complainant), Petitioner, Swathwood, and two other women once had an orgy and that the

complainant performed oral sex on Swathwood during the incident.[1]  Swathwood's brother

(Keith Gaines) and mother (Linda Gaines) testified that the complainant called them about 9:00

a.m. or 10:00 a.m. on July 4, 2000, and asked them whether they had seen Petitioner or

Swathwood.  The complainant stated that the men had taken her ATM card and gone to get beer,

but had not returned.  She was upset and angry, but she did not say that the men had assaulted

her, taken her wallet, or stolen her ATM card.

David Stout testified that he did not have a good memory of the event on July 4, 2000,

but he admitted to seeing Petitioner and Swathwood perform sex acts with the complainant in her

living room.  He stated that the complainant tried to perform oral sex on him and that he had

thought about doing something with her, but changed his mind, as he was not aroused.  Later, he

went in the bedroom to ask about the stereo.  Petitioner or Swathwood wanted the complainant

to perform oral sex on him, but he did not recall anything sexual happening to him.  He claimed

that he could not see what was happening in the bedroom, and that he did not hear the

complainant protest or ask for help.  He denied being threatened by Petitioner or Swathwood

after the incident.

### C.  Closing Arguments; Jury Instructions; the Verdict; and the Appeal

Petitioner's attorney argued to the jury that the complainant was not credible and that

reasonable doubt existed.  Swathwood's attorney argued that the complainant was a scorned

woman and that sexual activities with multiple partners were not unusual for her.  The prosecutor

---

[1]  The complainant testified that she did not recall any sexual activity with Swathwood
during that incident.  She claimed that Petitioner also told her that she performed oral sex on
Swathwood during the incident, but that he later said he had lied about the incident.

responded that, if what the defendants said was true, the complainant apparently fooled the jury, as well as law enforcement officials and medical personnel. The trial court instructed the jury that evidence of the complainant's prior sexual acts could be considered for the purpose of determining whether it showed that the victim consented to the sex acts alleged by the defendants.

The jury acquitted Petitioner of one count of first-degree criminal sexual conduct and convicted him of the other two counts of first-degree criminal sexual conduct.[2] On March 7, 2001, the trial court sentenced Petitioner to concurrent terms of 270 months (22 and one half years) to 540 months (forty-five years) in prison.

Petitioner raised his habeas claims in an appeal of right, but the Michigan Court of Appeals affirmed his convictions and sentence. *See People v. Gagne*, No. 235541 (Mich. Ct. App. Apr. 15, 2003). On December 29, 2003, the Michigan Supreme Court denied leave to appeal. *See People v. Gagne*, 469 Mich. 982; 673 N.W.2d 755 (2003) (table).[3]

### D. The Habeas Petition

Petitioner filed his habeas corpus petition on December 29, 2004. His grounds for relief read:

I.      The trial court abuse[d] its discretion when it prohibited Petitioner from introducing evidence of prior group sex involving the complainant and the petitioner.

---

[2] Swathwood was convicted of all three counts of first-degree criminal sexual conduct.

[3] Justices Michael F. Cavanagh and Marilyn Kelly voted to reverse the judgment of the Court of Appeals and to remand the case to the trial court for a new trial. Neither Justice provided any reasons for voting to reverse the lower court's decision. Justice Stephen J. Markman voted to grant leave to appeal, but he also failed to explain his vote.

II. The trial court violated Petitioner's constitutional rights to a fair trial, to confront the complainant, and to present a defense.

III. The prosecutor committed misconduct during closing arguments by commenting on the nonexistence of evidence.

IV. Ineffective assistance of counsel and right to a fair trial for failure to object.

Respondent urges the Court to deny the habeas petition. He argues that: Petitioner's first claim is not cognizable on habeas review; the second claim lacks merit; Petitioner's prosecutorial misconduct claim is procedurally defaulted; and the state court's adjudication of Petitioner's ineffectiveness claim did not result in an unreasonable application of Supreme Court precedent.

## II. Standard of Review

Petitioner is entitled to the writ of habeas corpus if he can show that the state court's adjudication of his claim on the merits–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409. "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1)." *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004), *cert. denied*, 544 U.S. 931 (2005).

### III. Discussion

### A. The Alleged Violation of the Rape Shield Statute

In Michigan,

> [e]vidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under [Mich. Comp. Laws §§ 750.520b to 750.520g] unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:
>
> (a) Evidence of the victim's past sexual conduct with the actor.
>
> (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

Mich. Comp. Laws § 750.520j(1) (footnote omitted).

Petitioner alleges that the trial court committed reversible error when it determined that certain evidence he sought to present at trial was prohibited by this statute. In a pretrial motion, he sought permission to admit evidence of the complainant's involvement in consensual group sex. He offered to prove that: (1) in June of 2000, he, the complainant, Swathwood, and two women engaged in sexual activity at the women's home after drinking at Tony's Lounge; (2) in June or July of 2000, he, the complainant, and Ruben Bermudez engaged in sexual activities together; (3) it was common practice for him and the complainant to use sex toys; (4) on the same night as the alleged crimes, the complainant invited David Stout to participate in group sex; and (5) in the spring of 2000, the complainant invited Petitioner and his father to engage in group sex.

The trial court ruled that Petitioner could present evidence regarding the "Tony's Lounge" incident and the fact that Petitioner and the complainant had used sex toys in the past. However, the trial court denied Petitioner's request to admit evidence regarding (1) the incident with Petitioner, the complainant, and Ruben Bermudez, (2) the complainant's invitation to have David Stout join in group sex on July 4, 2000, and (3) the complainant's attempt to persuade Petitioner's father to engage in sex with her and Petitioner during the spring of 2000.

Petitioner contested the trial court's ruling on appeal from his convictions. The Michigan Court of Appeals held that the trial court did not abuse its discretion in excluding evidence about Ruben Bermudez and Petitioner's father. The court of appeals also held that the trial court erred in excluding evidence of the complainant's invitation to David Stout to join her, Petitioner, and Swathwood in group sex on July 4, 2000. The court of appeals determined that reversal was not

required, however, because the evidence about Stout was admitted through the defendants' testimony.

Petitioner alleges in his habeas petition that the trial court misinterpreted the State's rape-shield law, MICH. COMP. LAWS § 750.520j, when it precluded him from introducing evidence of prior consensual group sex involving him and the complainant. This Court need not decide whether the state courts correctly applied Michigan's rape shield law, because "a federal [habeas] court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam)." *Estelle v. McGuire,* 502 U.S. 62, 68 (1991). "[F]ederal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). In fact, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, __, 126 S. Ct. 602, 604 (2005). Consequently, Petitioner's first claim is not cognizable on habeas corpus review. Whether the state courts correctly applied their own rape shield law is, by itself, of no concern to a federal habeas court. *Stephens v. Miller*, 13 F.3d 998, 1001 (7th Cir. 1994).

### B. Alleged Constitutional Violations

Petitioner's second claim alleges that the trial court's suppression of evidence of the complainant's prior sexual conduct with Petitioner and other men violated Petitioner's constitutional rights to a fair trial, to confront witnesses, and to present a defense. Petitioner contends that evidence of prior consensual group sex involving him and the complainant was relevant to the issue of the complainant's consent on the night in question. The Michigan Court of Appeals concluded on review of this claim that, in light of the admissible evidence of the

complainant's past sexual conduct, Petitioner's right of confrontation was not violated.

## 1. Legal Framework

### a. The Right to Defend

> A defendant's right to due process in the criminal context is essentially the right to defend himself against the charges the state has brought against him. As a result, the right to confront and cross-examine witnesses and to call one's own witnesses is fundamental to a defendant's due process rights. *Chambers v. Mississippi,* 410 U.S. 284, 294, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

*Giles v. Schotten*, 449 F.3d 698, 704 (6th Cir.), *cert. denied*, __ U.S. __, 127 S. Ct. 589 (2006).

"[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 547 U.S. 319, __, 126 S. Ct. 1727, 1731 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). Although judges may "exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury," "the Constitution . . . prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote." *Id*. at 1732. The exclusion of evidence can violate a defendant's right to present a defense if the omitted evidence would have created a reasonable doubt as to the defendant's guilt. *United States v. Blackwell*, 459 F.3d 739, 753 (6th Cir. 2006) (citing *Washington v. Shriver*, 255 F.3d 45, 57 (2d Cir. 2001)), *cert. denied*, __ U.S. __, 127 S. Ct. 1336 (2007).

### b. The Right to Confront Witnesses

"The Sixth Amendment guarantees to a criminal defendant the right 'to be confronted with the witnesses against him.' U.S. CONST. amend VI." *Danner v. Motley*, 448 F.3d 372, 377

(6th Cir. 2006). The Amendment provides a criminal defendant with "the right physically to face those who testify against him, and the right to conduct cross-examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987).

> [A] trial court abuses its discretion when it completely bars exploration of a relevant subject on cross-examination. *Alford v. United States*, 282 U.S. 687, 694 (1931); *United States v. Atwell*, [766 F.2d 416, 419 (10th Cir. 1985)]. This rule applies not only to cross-examination into the substantive facts in controversy *but also to cross-examination into the government witness's credibility.*

*Dorsey v. Parke,* 872 F.2d 163, 166-67 (6th Cir.1989) (emphasis added); *see also Wright v. Dallman*, 999 F.2d 174, 179 (6th Cir. 1993) (stating that "the bounds of a trial court's discretion are exceeded when the defense is not allowed to 'plac[e] before the jury facts from which bias, prejudice or *lack of credibility of a prosecution witness might be inferred.*'") (quoting *United States v. Garrett*, 542 F.2d 23, 25 (6th Cir. 1976)) (emphasis added).

"Where the trial court limits the extent of cross-examination, the inquiry for the reviewing court is 'whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory.'" *Stewart v. Wolfenbarger*, 468 F.3d 338, 347 (6th Cir. 2006) (quoting *Dorsey v. Parke,* 872 F.2d at 167). "[W]here cross-examination of a key government witness was only partially limited and where the questioning that was barred was not aimed at eliciting any additional facts," no constitutional violation occurs. *See id.* (quoting *Dorsey v. Parke*, 872 F.2d at 166).

## 2. Application

There were three matters about which Petitioner was not permitted to question the complainant: (1) the "threesome" involving Petitioner and Ruben Bermudez, (2) the

complainant's invitation to David Stout to participate in group sex on July 4, 2000, and (3) the complainant's invitation to Petitioner's father to engage in a "threesome."

### a. David Stout

The Michigan Court of Appeals determined that Petitioner should have been permitted to question the complainant about her alleged invitation to have David Stout join in group sex on July 4, 2000, because the alleged conduct was incident to the charged offense. The court of appeals concluded, however, that reversal was not required on this basis, because the evidence was admitted through the defendants' testimony. This conclusion was equivalent to a harmless-error analysis. When a state court has found an error to be harmless, a federal habeas court must determine whether the state court's finding of harmless error was contrary to, or an unreasonable application of, *Chapman v. California*, 386 U.S. 18 (1967). *Eddleman v. McKee*, 471 F.3d 576, 578 (6th Cir. 2006). The Supreme Court held in *Chapman* that a constitutional trial error can be deemed harmless if it was harmless beyond a reasonable doubt. *Chapman*, 386 U.S. at 24. The appropriate standard of review here is *Chapman*, plus deference to § 2254(d). *Eddleman*, 471 F.3d at 583 and 585.

This Court agrees with the state court of appeals that Petitioner's inability to question the complainant about her alleged invitation to perform oral sex on David Stout was harmless error. The complainant likely would have denied making the invitation. Furthermore, both Swathwood and Petitioner testified that the complainant invited Stout to join them in sexual activity. Even Stout, who professed to have little memory of the incident due to his drunkenness, testified that the complainant tried to have oral sex with him. He claimed that the complainant "just quit" because he was not aroused. Thus, even though Petitioner was not permitted to question the

complainant directly about her alleged invitation to have David Stout join in group sex, the evidence was admitted in other ways.

The alleged constitutional error was harmless beyond a reasonable doubt. Therefore, the state court's harmless-error determination was an objectively reasonable application of *Chapman*.

### b. Evidence Concerning Ruben Bermudez and Petitioner's Father

The Michigan Court of Appeals stated that evidence of the complainant's sexual activity with Ruben Bermudez and her comment about desiring a "threesome" with Petitioner and Petitioner's father was not admissible under the rape shield act because it involved someone other than Petitioner. The court of appeals upheld the trial court's decision to exclude evidence about Bermudez on the basis that the incident with Bermudez occurred while the complainant was still dating Petitioner. The court of appeals noted that the instant offense occurred after the complainant ended her relationship with Petitioner[4] and that it involved Swathwood, not Bermudez.

The status of the complainant's relationship with Petitioner was not a valid basis for excluding evidence about Bermudez The complainant could have been *less* likely to engage in sex with Bermudez while she was dating Petitioner and more likely to participate in a "threesome" with Petitioner and Bermudez after she stopped dating Petitioner.

As for evidence that the complainant invited Petitioner and his father to participate in a "threesome," the court of appeals ruled that the statement could be considered "conduct" for

---

[4] As previously noted, Petitioner and the complainant dated from January of 2000 to approximately June 11, 2000, and the alleged assault occurred in early July of 2000.

purposes of the rape shield act but that the statement was not probative of whether the complainant consented to engage in sexual relations with Petitioner and Swathwood. It is true that evidence of past conduct is not necessarily indicative of whether a person consented to sex at another time. The Court also recognizes that

> [n]o matter how central an accuser's credibility is to a case -- indeed, her credibility will almost always be the cornerstone of a rape or sexual assault case, even if there is physical evidence -- the Constitution does not *require* that a defendant be given the opportunity to wage a general attack on credibility by pointing to individual instances of past conduct. . . . [T]he Sixth Amendment only compels cross-examination if that examination aims to reveal the motive, bias or prejudice of a witness/accuser.

*Boggs v. Collins*, 226 F.3d 728, 740 (6th Cir. 2000) (emphasis in original). However, the legitimate interest that a state has in encouraging victims of sexual misconduct to pursue legal proceedings against alleged offenders "must be very substantial to trump the defendant's right to confront witnesses by traditional means . . . ." *Vasquez v. Jones*, __ F.3d __, __, No. 02-73310, 2007 WL 1324815, at *6 (6th Cir. May 8, 2007). And in *Vasquez*, the Sixth Circuit found no meaningful distinction between the constitutional status of cross-examination as to bias and cross-examination which attempts to attack a witness's credibility or character for truthfulness.[5]

Even if Petitioner's right of confrontation was not violated, his right to present a full and meaningful defense was violated by the exclusion of evidence about Ruben Bermudez and Petitioner's father. Unlike the excluded evidence about Stout, there was no other evidence that the complainant had group sex with Petitioner and Bermudez or that she invited Petitioner's

---

[5] *Vasquez* was not a rape case, and the confrontation error alleged was the inability to impeach a prosecution witness's preliminary examination testimony with the witness's prior criminal record.

father to join in a "threesome." Evidence of prior group sex involving Petitioner and Bermudez and evidence of the complainant's invitation to Petitioner's father was an indication that it was not unusual or implausible for the complainant to engage in a "threesome."

Sexual history can "be relevant where the victim has engaged in a prior pattern of behavior clearly similar to the conduct immediately in issue." *United States v. Kasto*, 584 F.2d 268, 271 n.2 (8th Cir. 1978). The conduct sought to be introduced at Petitioner's trial was similar to the charged incident in that a "threesome" was involved. Both the invitation to Petitioner's father and the incident with Ruben Bermudez established a pattern of conduct, which would have tended to make the existence of consent with Petitioner and Swathwood more probable than it was without the evidence. Although there was other evidence that the complainant was not averse to group sexual activity, the excluded evidence might have altered the jurors' impression of the complainant's credibility. *See, e.g., Olden v. Kentucky*, 488 U.S. 227, 232-33 (1988) (concluding in a case of alleged rape that a reasonable jury might have received a significantly different impression of the complainant's credibility had defense counsel been permitted to impeach the complainant with evidence supporting a motive to lie); *see also Lewis v. Wilkinson*, 307 F.3d 413, 422 (6th Cir. 2002) (stating in a case of alleged rape that "the excluded evidence permitted the jury the reasonable inference that [the complainant] consented to have intercourse with [the petitioner]").

The excluded evidence arguably did not run afoul of the Rape Shield Act because it involved Petitioner. *See* Mich. Comp. Laws § 750.520j(1) (permitting evidence of a victim's past sexual conduct with the defendant, provided that the evidence is material to a fact at issue and its prejudicial nature does not outweigh its probative value). And, in light of explicit testimony

15

regarding sex and illegal narcotics, the probative value of the excluded evidence would not have been outweighed by unfair prejudice, confusion of the issues, or the potential to mislead the jury.

Furthermore, the trial court instructed the jurors not to consider the victim's prior sex acts as evidence that the victim was a "loose" woman. The trial court also charged the jurors not to use the evidence to make a moral judgment which would influence their decision-making. The court stated that, if the jurors believed the evidence of prior sex acts, they should consider the evidence only for the purpose of determining whether it showed that the victim consented to the sex acts alleged by the defendants.

The Court concludes that Petitioner's right to a fair trial and his right to present a full and meaningful defense were violated by his inability to introduce additional facts about the complainant's conduct. The omitted evidence might have created a reasonable doubt that did not otherwise exist, and it might have altered the jury's impression of the complainant's credibility. Therefore, the state court's decision resulted in a decision that was contrary to, or an unreasonable application of, clearly established federal law. Well-established constitutional principles required the trial court to balance the State's interest in excluding evidence against Petitioner's right to present a defense and to establish his innocence. *Johnson v. Moore*, 472 F. Supp.2d 1344, 1363 (M.D. Fla. 2007). The Constitution also required the trial court, if Petitioner's interest were greater, to receive testimony notwithstanding the statute. *Id.*

### Harmless Error

Respondent maintains that any constitutional error was harmless. The Court, however, believes that the constitutional error might have had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)

(*Kotteakos v. United States*, 328 U.S. 750 (1946)). The case was a credibility contest in which the complainant's testimony was crucial to the prosecution's case. The excluded evidence was not cumulative, and it would have contradicted the complainant's testimony that she had not been with other men. (Tr. Jan. 30, 2001, at 53-54). "Establishing mendacity in her testimony about her sexual history . . . would directly and crucially suggest mendacity in her testimony about her sexual encounter with [Petitioner]." *Johnson v. Moore*, 472 F. Supp.2d at 1363.

"[T]he uncertain judge should treat [a constitutional] error, not as if it were harmless, but as if it affected the verdict (*i.e.*, as if it had a 'substantial and injurious effect or influence in determining the jury's verdict')," *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995), "[a]nd, the petitioner must win." *Id.* at 436. Therefore, the Court grants relief on Petitioner's second claim.

### C. The Prosecutor's Conduct

The third habeas claim alleges prosecutorial misconduct during closing arguments. Although Respondent contends that this claim is procedurally defaulted because Petitioner failed to object to the prosecutor's conduct during trial, procedural default is not a jurisdictional bar to review on the merits of an issue. *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), *cert. denied*, __ U.S. __, __, 126 S. Ct. 1032 (2006). The Court will excuse the alleged procedural default, because "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)), and because it is more efficient to address Petitioner's claim on the merits than to engage in a procedural-default analysis.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004), *cert.* denied, 544 U.S. 921 (2005). To

prevail on a claim of prosecutorial misconduct, Petitioner must demonstrate that the prosecutor's remarks, taken in the context of the entire trial, were sufficiently prejudicial and infected the trial with such unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 639, 643 (1974). It is not enough to show that the prosecutor's conduct or remarks were improper or even universally condemned. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). "On habeas review, the standard to be applied to claims of prosecutorial misconduct is whether the conduct was 'so egregious so as to render the entire trial fundamentally unfair.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979)).

When reviewing claims of prosecutorial misconduct, courts must first ask whether the prosecutor's conduct or remarks were improper. *Slagle v. Bagley,* 457 F.3d 501, 516 (6th Cir. 2006), *petition for cert. filed,* (U.S. Apr. 5, 2007) (No. 06-10659). If the conduct or remarks were improper, a reviewing court must consider the following

> four factors to decide whether the improper acts were sufficiently flagrant to warrant reversal: (1) whether the evidence against the defendant was strong; (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made deliberately or accidentally.

*Id*.

"[S]tate courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Id.* (alteration in original) (quoting *Donnelly*, 416 U.S. at 645). Moreover, the Sixth Circuit "has been reluctant to grant habeas petitions based on improper

prosecutorial statements at closing argument."  *Wilson v. Mitchell*, 250 F.3d 388, 399 (6th Cir. 2001).

### 1.  Commenting on the Nonexistence of Evidence

Petitioner alleges that the prosecutor committed misconduct by commenting on evidence that the trial court precluded him from presenting to the jury, namely, other incidents of consensual sexual activity involving Petitioner, the complainant, and another man.  Prosecutors may not misrepresent evidence, *Hodge v. Hurley*, 426 F.3d 368, 380  (6th Cir. 2005), or assert facts that were never admitted in evidence, *Washington v. Hofbauer,* 228 F.3d 689, 700 (6th Cir. 2000).  On the other hand, they may "argue the record, highlight the inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir.), *cert. denied*, __ U.S. __, 126 S. Ct. 163 (2005).  "They may even "argue that the jury should arrive at a particular conclusion based on the record evidence, including the conclusion that the evidence proves the defendant's guilt."  *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999), *abrogated on other grounds as explained in Mackey v. Dutton*, 217 F.3d 399, 406 (6th Cir. 2000).

### a.  The Disputed Remarks

Petitioner complains that the prosecutor attacked his defense as unlikely and relied on the absence of evidence of prior group sex involving him and the complainant.  The prosecutor stated in her closing argument that, even if the jurors believed that the complainant engaged in consensual sexual contact with Swathwood on a prior occasion, "the nature of the contact and relations here were 190 (sic) degrees different" than the "Tony's Lounge" incident.  (Tr. Feb. 5, 2001, at 12.)  Later, during the same closing argument, the prosecutor said:

[L]adies and gentlemen, [the complainant] told you on the stand, I was in love with [Gagne], I loved him then. That does not explain why she would have anything to do with Mr. Swathwood. It does not explain why she would ever have anything to do with David Stout. Sexual penetration in every imaginable way, ladies and gentlemen, all at [the complainant's] direction, including multiple penetrations of her anus with their penises, with vibrators and with a wine bottle. All of this from a woman who has hemorrhoids, ladies and gentlemen, that bleed[]. But she wanted them to do this. She asked for it. She told them what to do, according to these men's testimonies.

* * *

The addition, ladies and gentlemen, of David Stout, as a supposed sexual partner to [the complainant] during this scenario *is an attempt to in essence portray [the complainant] as some kind of an, I don't know what kind of word you would use, somebody's maniac, somebody's fool of some kind.*

* * *

Now, according to Mr. Gagne, . . . they scoot across the floor while he is still sexually penetrating her, and then she starts to perform oral sex on Mr. Swathwood while giving Mr. Stout a hand job, something, ladies and gentlemen, I would suggest two things about. Number one, it's not likely something that, if any man was ever involved in such a thing, that he would forget or fail to mention. And, number two, it's certainly a version that is *much more consistent with the pornographic movie than real life.*

(*Id*. at 14-17) (emphasis added by Petitioner).

### b. Whether the Remarks were Improper

Petitioner states that these comments were a reference to excluded evidence of group sex involving him and the complainant. Petitioner also alleges that the comments bolstered the prosecution's case and denied the existence of consensual sex activity involving him, the complainant, and other men.

The Court believes that the prosecutor was merely saying that the defense theory was not

credible because the defendants' version of the facts was implausible and because it was unlikely that the complainant would have consented to the defendants' conduct. Moreover, the defendants were able to cross-examine the complainant about whether she (1) had sex with Swathwood during the "Tony's Lounge" incident, (2) had used vibrators or a wine bottle with Petitioner, (3) preferred forceful sex, and (4) could remember what happened on the night in question. She claimed in response that she had used vibrators with Petitioner, but never a wine bottle, and that she did not recall having sex with Swathwood and did not prefer forceful sex.

The prosecutor did not imply that Petitioner had an obligation to produce additional evidence, and she did not mention evidence that Petitioner was precluded from presenting to the jury. Her remarks were proper in that they reflected her theory that the complainant did not willingly engage in the sexual activities which she and the defendants described to the jury.

## 2. Bolstering and Vouching for Witnesses

Petitioner alleges that the prosecutor bolstered the complainant's testimony by telling the jury that key prosecution witnesses, including two police officers and three medical professionals, believed the complainant's story. The disputed remarks, in context, read:

> According to [the defendants'] testimony, [the complainant] took over, she was the boss, she was the sex fiend, she was the crack fiend. Not to mention, ladies and gentlemen, the academy award winning actress. What you saw . . . [the complainant] go through on the stand, takes you well beyond reasonable doubt, well beyond reasonable doubt. But apparently she was not only able to try to fool you here, but she fooled Detective Jex and Officer Johnson with over 30 years combined experience in law enforcement. Her emotional upset and breakdown, her own physician of over 25 years, as well as an emergency room physician, and a nurse who had worked in the emergency room for 12 years, supposed to believe that she fooled them.

(*Id*. at 64.)

21

The Michigan Court of Appeals agreed with Petitioner that these remarks were improper. The court of appeals concluded, however, that reversal was not warranted because the error was not outcome-determinative plain error

### a. Whether the Remarks were Improper

Prosecutors may not vouch for their witnesses or assert facts known only to the prosecuting attorney. *United States v. Young*, 470 U.S. 1, 17-19 (1985); *Berger v. United States*, 295 U.S. 78, 88 (1935).

> Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the [prosecutor] behind that witness. *See, e.g., Taylor v. United States,* 985 F.2d 844, 846 (6th Cir. 1993); *United States v. Martinez,* 981 F.2d 867, 871 (6th Cir. 1992). Generally, improper vouching involves either blunt comments, *see, e.g., United States v. Kerr,* 981 F.2d 1050, 1053 (9th Cir. 1992) (stating that improper vouching occurred when prosecutor asserted own belief in witness's credibility through comments including "I think he [the witness] was candid. I think he is honest."), or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony, *see, e.g.,* [*United States v. ]Carroll,* 26 F.3d [1380, 1388 (6th Cir. 1994)] (stating that improper vouching occurred when prosecutor argued that the witness testifying under a plea agreement was in jeopardy if the court or government did not find the testimony truthful).

*United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999) (first and third alterations added; second alteration in original). "Bolstering occurs when the prosecutor implies that the witness's testimony is corroborated by evidence known to the government but not known to the jury." *Id*. at 551.

The prosecutor did not state that she personally believed the complainant or other prosecution witnesses, and she did not insinuate that she had special knowledge of facts or evidence not known to the jury. However, she did suggest that the complainant's testimony was

corroborated by the testimony of other prosecution witnesses, and the Sixth Circuit has determined that vouching or bolstering occurs when a prosecutor refers to statements that were not admitted in evidence in order to enhance the complainant's credibility. *See Washington v. Hofbauer*, 228 F.3d at 701. Because the police officers and medical personnel who testified did not express an opinion on the truthfulness or falsity of the complainant's comments to them, the prosecutor's argument was improper.

### b. Flagrancy

Despite the impropriety of the prosecutor's remarks, the remarks did not amount to flagrant misconduct or a due process violation. This is not a case where the prosecutor made multiple egregious errors in closing arguments. *Cf. Hodge*, 426 F.3d at 371 and 386 (granting a conditional writ of habeas corpus in a case where the prosecutor made derogatory remarks and character-based arguments about the defendant, incorrectly and repeatedly stated that, in order to convict the defendant, the jury had to conclude the complainant's family was intentionally lying on the witness stand, misrepresented a defense witness's testimony, implied that a disagreement between expert witnesses meant that one of the witnesses must be perjuring himself or herself, and made repeated comments that the complainant and her family were absolutely believable, but the defendant and his witnesses were not credible); *Washington v. Hofbauer*, 228 F.3d at 698 (granting a conditional writ of habeas corpus in a case where the prosecutor focused on the defendant's bad character, misstated the prosecution's burden of proof, and characterized the complainant's story as consistent over time when there was no evidence supporting that factual assertion).

Moreover, the prosecutor made the remarks during her rebuttal argument. She was

responding to the defense attorneys' closing arguments that the complainant was not credible, that reasonable doubt existed, and that, according to the prosecution, everybody lied except the complainant. Prosecutors ordinarily are "entitled to wide latitude" in their rebuttal arguments and "may fairly respond to arguments made by defense counsel." *Angel v. Overberg*, 682 F.2d 605, 607-08 (6th Cir. 1982) (*en banc*). They also are "permitted to comment on the defense's trial strategy." *Slagle*, 457 F.3d at 522 (citing *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000)).

Furthermore, when there is conflicting testimony, as there was here, "it may be reasonable to infer, and accordingly to argue, that one of the two sides is lying." *United States v. Collins,* 78 F.3d 1021, 1040 (6th Cir. 1996). Because Petitioner put his veracity at issue by testifying, the prosecutor was permitted to attack his credibility and his defense. *Francis*, 170 F.3d at 551; *United States v. Veal*, 23 F.3d 985, 989 (6th Cir. 1994).

Finally, although the case was a credibility contest and the prosecutor's remarks were deliberately made, the remarks were not extensive, and they could not have misled the jurors. The prosecutor prefaced her closing argument with the suggestion that the jurors rely on their collective memories if her comments did not coincide with their recollection of the testimony.

In addition, the trial court explained to the jury that the attorneys' arguments were not evidence, but were intended to assist them in understanding the evidence and the theory of each party. The court charged the jurors to disregard an attorney's comments if the comments were not supported by the evidence or by their own general knowledge and experience. The court also instructed the jurors to use their own general knowledge and experience in judging whether particular evidence seemed reasonable and probable. "[J]uries are presumed to follow their instructions." *Marsh v. Richardson*, 481 U.S. 200, 211 (1987); *see also United States v. Roberts*,

986 F.2d 1026, 1031 (6th Cir. 1993) (stating that "the prejudicial effect of improper comments may be negated by curative instructions to the jury").

The Court agrees with the Michigan Court of Appeals that the disputed remarks likely did not have a bearing on the outcome of the trial. Therefore, the prosecutor's attempt to corroborate the complainant's testimony with the testimony of other prosecution witnesses was not flagrant misconduct warranting habeas corpus relief.

### D. Trial Counsel

Petitioner's fourth and final claim alleges that his trial attorney was ineffective for failing to object to the prosecutor's remarks. The Michigan Court of Appeals concluded on review of this claim that the prosecutor's alleged reference to the absence of evidence was proper and, therefore, defense counsel was not ineffective for failing to object to that argument. The court of appeals stated that defense counsel's failure to object to the other challenged remark did not result in ineffective assistance, in part, because there was not a reasonable probability that the trial would have been different, but for counsel's alleged error.

The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), "qualifies as 'clearly established Federal law'" for purposes of evaluating ineffective-assistance-of-counsel claims. *Williams*, 529 U.S. at 391. Pursuant to *Strickland*, Petitioner must demonstrate that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. Petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. He also must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to

undermine confidence in the outcome." *Id*. at 694.

The prosecutor did not refer to facts that Petitioner was precluded from placing in evidence. Therefore, defense counsel was not ineffective for failing to object to the first instance of alleged prosecutorial misconduct. A defense attorney is not ineffective for failing to make a meritless objection. *Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005), *cert. denied*, __ U.S. __, 126 S. Ct. 1142 (2006), and *cert. denied*, __ U.S. __, 126 S. Ct. 1145 (2006).

The prosecutor's insinuation that the complainant's testimony was corroborated by the testimony of other witnesses constituted improper bolstering of the complainant's testimony. A failure to object to a prosecutor's comments on witness credibility is much less susceptible to the argument that it should be considered reasonable trial strategy than a decision not to object to inadmissible evidence already heard by the jury. *Hodge*, 426 F.3d at 385-86.

Even assuming, however, that defense counsel's performance was deficient, the failure to object could not have prejudiced the defense. Unlike *Hodge,* 426 F.3d at 377, the prosecutor did not state repeatedly that the complainant and other prosecution witnesses were believable and that the defendants and their witnesses were not credible. Furthermore, had defense counsel objected to the remarks about the complainant's testimony being corroborated, the trial court, in all likelihood, would have instructed the jurors to disregard the prosecutor's remarks and to rely on their collective memory of the testimony. There is not reasonable probability that the result of the trial would have been different absent the prosecutor's improper remarks. Petitioner has failed to show that his attorney's allegedly deficient performance prejudiced the defense.

### IV. Conclusion

Petitioner's first claim is not cognizable on habeas review, and the state court's adjudication of his third, and fourth claims was not objectively unreasonable. However, the state court's rejection of Petitioner's second claim concerning his right to defend himself was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. Therefore, the application for a writ of habeas corpus is conditionally GRANTED. The State shall release Petitioner unless it retries him within ninety days of this order.

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

Dated: July 2, 2007